**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF RHODE ISLAND**

---

In re:  Michael DiRuzzo and                             BK No.: 08-12571
        Carmela Falco-DiRuzzo,
            Debtors                                           Chapter 13

---

**MEMORANDUM AND ORDER**
**(this relates to Doc. #100)**

This matter presents unique circumstances in which the Chapter 13 trustee, upon completion of the term of the Debtors' confirmed plan, now seeks disgorgement by Pawtucket Creditor Union ("PCU") of five years of disbursements it received under the plan. The Trustee alleges that he made these distributions as the result of a clerical error on his part. He contends that PCU did not have a right to receive such distributions because its claim had been disallowed, despite a prior determination by the Court allowing the claim. The allowance of the claim followed a hearing on a motion to modify PCU's secured claim and a subsequent order confirming the Debtors' Chapter 13 plan (Doc. #59) ("Confirmation Order") which allowed PCU's claim in its entirety as an unsecured claim. PCU objects to the Trustee's turnover motion and asserts that its unsecured claim is an allowed claim and that it had the right to receive all of the plan disbursements paid by the Trustee. The resolution of this dispute is far from clear-cut based upon the confusing and contradictory record resulting from multiple errors and oversights by both the Trustee and PCU during the course of this case.[1] Ultimately, where both parties substantially contributed to the unusual predicament that the Trustee only recently discovered, I conclude that the equities demand a balancing between the interests of the Trustee and PCU.

---

[1] This case and the proceedings giving rise to the current dispute pre-date my taking the bench and occurred prior to my predecessor's adoption of a uniform Chapter 13 plan for this district which incorporates motions to modify secured claims and avoid judicial liens. Under the prior practice, a debtor had to file a separate motion to modify a secured claim and obtain a determination that the claim was only partially secured or entirely unsecured.

1

## I. JURISDICTION

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) and 1334 and DRI LR Gen 109(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (E).

## II. BACKGROUND

The facts in this case are undisputed. On August 21, 2008, Debtors Michael DiRuzzo and Carmela Falco-DiRuzzo filed a petition under Chapter 13 of the Bankruptcy Code.[2] On "Schedule F – Creditors Holding Unsecured Nonpriority Claims," the Debtors listed PCU as the holder of a second mortgage in the amount of $75,641.00 against their residence located at 70 Julia Drive, North Providence, Rhode Island. The deadline to file proofs of claims was December 18, 2008 ("Claims Bar Date") and as of that date PCU had not filed a proof of claim. On January 20, 2009, the Debtors filed a second amended Chapter 13 plan (Doc. #44) ("Plan"), and on January 28, 2009, *after* the passage of the Claims Bar Date, the Debtors filed a motion seeking to modify and "strip off" PCU's second mortgage as wholly unsecured in accordance with § 506(a) (Doc. #47) ("Motion to Modify").

The Court conducted a hearing on both confirmation of the Plan and the Motion to Modify on February 26, 2009, and as noted in a docket entry following the hearing, the Court orally granted the Motion to Modify and confirmed the Plan.[3] On the following day the Court entered an order granting the Motion to Modify. Subsequently, on March 26, 2009, again well *after* expiration of the Claims Bar Date, the Court entered the Confirmation Order. That order,

---

[2] Unless expressly stated otherwise, all references to the Bankruptcy Code or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq*.

[3] The docket entry summarized the Court's findings during the hearing as follows: "Court grants the motion. Trustee states that plan payments are $1896 a month for 60 months plus proceeds of sale of real estate in New Hampshire. There is a $2250 arrearage. Unsecured creditors will receive 67% plus a pro rata share of the real estate proceeds. Court confirms plan. Trustee to file order. Order Due by: 3/9/2009."

2

submitted by the Trustee, included a provision that "[t]he second mortgage claim by [PCU] will be allowed as a wholly unsecured claim pursuant to the Order Granting Motion to Modify Secured Claim entered by this Court on February 27, 2009."[4] It was not until some five months after the Claims Bar Date, on May 18, 2009, that PCU filed a proof of claim for its unsecured claim in the amount of $74,165.32 (Claim No. 20). The Trustee filed an objection to PCU's claim on the grounds that it was untimely. Instead of responding to the Trustee's objection, PCU chose to take no action, and the Court sustained the Trustee's objection in the absence of an objection from PCU.

Nearly five years later, on March 27, 2014, the Trustee filed the instant motion seeking turnover of funds in the amount of $41,212.43, explaining that as the result of a clerical error he erroneously disbursed funds to PCU under the Plan on account of its unsecured claim (Doc. #100) ("Motion for Turnover"). PCU timely filed its objection to the Motion for Turnover (Doc. #101) ("Objection"). The Court conducted a hearing on the Motion for Turnover and requested that the parties further address the role, if any, equitable considerations play given the errors committed by both parties, from which this quandary stems.[5]

---

[4] The relevant provision of the Confirmation Order provides in its entirety:

> The second mortgage claim by Pawtucket Credit Union will be allowed as a wholly unsecured claim pursuant to the Order Granting Motion to Modify Secured Claim entered by this Court on February 27, 2009. Notwithstanding anything in the confirmed Chapter 13 Plan to the contrary, the proposed strip-off or modification of the second mortgage in favor of Pawtucket Credit Union on the Debtors' property at 70 Julia Drive, North Providence, Rhode Island shall not be effective unless and until a discharge has been entered on the Bankruptcy Court's Docket in the Chapter 13 case.

*See* Confirmation Order, "Summary Of Disbursements To Be Made Under The Plan," Section D.1 (Doc. #59) ("Disbursements Summary").

[5] PCU filed a memorandum of law in support of its objection on May 16, 2014 (Doc. #109) ("PCU's Memo"), and the Trustee filed a reply to PCU's Memo on May 23, 2014 (Doc. #110) ("Trustee's Reply") in addition to his initial memorandum of law in support of his Motion for Turnover (Doc. #104) ("Trustee's Memo").

3

### III. POSITIONS OF THE PARTIES

#### A. Trustee

The Trustee explains that when he entered PCU's claim into his computer software program the amount of the claim should have been recorded as $0.00, but due to a clerical error, it was mistakenly recorded in the amount set forth in PCU's proof of claim. Consequently, he has made disbursements to PCU over the past five years totaling $41,212.43. The Trustee argues that because his objection to PCU's claim was sustained, PCU did not hold an allowed claim and it was not entitled to receive any disbursements under the Plan. He maintains that the provision in the Confirmation Order regarding PCU's claim in and of itself was insufficient to entitle PCU to such Plan disbursements. The time for filing proofs of claims under Fed. R. Bankr. P. 3002(c) functions, he asserts, similar to a statute of limitations and is jurisdictional so that when PCU filed its claim late it was properly disallowed. Thus, PCU should not have received Plan disbursements and it is required to return those disbursements to the Trustee for redistribution to the other unsecured creditors holding allowed claims.

#### B. PCU

PCU challenges this argument by relying upon the Confirmation Order's express allowance of its second mortgage claim as an unsecured claim, thereby validating its claim independent of its later-filed proof of claim which, it asserts, was filed merely for the purpose of "valuation" to establish the precise amount of the claim. Objection ¶¶ 4-5. According to PCU, when the Trustee objected to the claim, PCU did not respond because it was willing to accept the Debtors' valuation of its claim. In further support of its position, PCU emphasizes that the Trustee knew about its claim as a result of the earlier hearing on the Motion to Modify and the provision in the Confirmation Order that its claim "will be allowed" as an unsecured claim.

*Id.* ¶ 4. Furthermore, PCU contacted the Trustee's office in 2011 when the payments temporarily ceased to inquire if and when they would resume, and in fact the Trustee resumed the payments after this communication. PCU rests upon the finality of the Confirmation Order which it asserts has "*res judicata* effect [that] bars collateral attacks against PCU's allowed claim." PCU's Memo at 3 (emphasis added). PCU argues:

> [t]he Trustee's proposed order was adopted by the Court and entered as a final confirmation order with the language allowing [PCU's] claim intact. During the approximately two weeks between the proposal of the order and its entry by the Court no action was taken to amend, modify, or withdraw the proposed order. After the entry of the Confirmation Order, no action was taken during the appeals period or for 5 years thereafter to appeal, modify, vacate or otherwise dispense of the final Confirmation Order.

*Id.* at 4.

The specific language of the Confirmation Order, PCU further argues, insulates its claim from subsequent attack; "the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the Trustee's obligations to verify a plan's compliance with the Code . . . . 'Under § 1327, a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation.'" *Id.* at 5 (quoting *In re Szostek*, 886 F.2d 1405, 1406, 1408 (3rd Cir. 1989)) (emphasis supplied in original). In short, PCU argues that the Confirmation Order "with its *res judicata* effect[] trump[s] the bar date set by the rules." *Id.* at 7 (emphasis added).

Lastly, on the issue of equity, PCU complains that "[t]he Trustee has unclean hands as the Confirmation Order . . . was drafted by the Trustee and he cannot claim to be the victim of an 'error' of his own creation. There is a compelling interest in the finality of a confirmed Chapter 13 Plan which compels compliance regardless of any 'error' once the appeal period has passed." Objection ¶¶ 9-10.

5

## IV. DISCUSSION

### A. Nature of PCU's Claim Prior to Confirmation

Pursuant to the Bankruptcy Code, a creditor generally is required to file a proof of claim for purposes of allowance of its claim. *See* 11 U.S.C. §§ 501(a), 502; Fed. R. Bankr. P. 3002(a). The significance of having an allowed claim is straightforward: "[a]fter a plan is confirmed, distribution shall be made to creditors whose claims have been allowed." Fed. R. Bankr. P. 3021. Specific to Chapter 13, "a proof of claim is timely filed if it is filed not later than 90 days after the first date set for the meeting of creditors called under § 341(a) of the Code." Fed. R. Bankr. P. 3002(c). "A court may enlarge the time for filing a proof of claim only to the extent and under the conditions stated in Rule 3002(c)." *Zich v. Wheeler Wolf Attorneys (In re Zich)*, 291 B.R. 883, 885 (Bankr. M.D. Ga. 2003).[6] None of these circumstances apply here.

PCU maintains that while the Claims Bar Date passed without it filing a proof of claim or obtaining an extension of the deadline, it held an allowed claim *before* the Court entered the Confirmation Order because the Motion to Modify constituted an informal proof of claim. The merits of this argument are debatable.[7] Moreover, for the reasons discussed *infra,* this argument

---

[6] Rule 3002(c) lists several exceptions to this timing requirement for: (1) claims filed by governmental units, (2) claims filed by infants or incompetent persons (or their representatives), (3) unsecured claims that become allowable as the result of a judgment entered after the claims bar date, (4) claims arising from the rejection of an executory contract or expired lease of the debtor, (5) changes in the debtor's ability to pay a dividend to creditors, or (6) insufficient notice on a creditor at a foreign address.

[7] PCU rests on the fact that the Debtor was on notice of PCU's claim and moved for a determination that the claim be treated as a wholly unsecured claim. It points out that manifestation in the judicial record prior to the expiration of the claims bar date regarding the existence, nature, and amount of its claim can constitute an informal proof of claim which the "formal" proof of claim merely amends. *See Gens v. Resolution Trust Corp.*, 112 F.3d 569, 575 (1st Cir. 1997) (quoting *Unioil, Inc. v. H.E. Elledge (In re Unioil, Inc.)*, 962 F.2d 988, 992 (10th Cir. 1992)). However, the Trustee's counter to this argument is not without merit. Ordinarily, one of the requirements for an informal proof of claim is that the *creditor* take the action that constitutes the informal claim. *See In re Greene*, 33 B.R. 1007, 1009 (D.R.I. 1983) ("The general rule appears to take shape as follows: if, within the mandated period, a creditor has affirmatively undertaken to press its claim by action which manifests, on the judicial record, a clear intention to pursue the matter, then in such event, technical flaws are subject to later correction."); *In re Hall*, 218 B.R. 275, 277(Bankr. D.R.I. 1998) (creditor's motion for relief from stay served as informal proof of claim); *In re Thornlimb*,

6

may be a red herring because of the unique circumstances that subsequently unfolded in this case. It also completely ignores the order entered sustaining the Trustee's objection to that proof of claim.

### B. Effect of the Confirmation Order on PCU's Claim

The parties focus the majority of their arguments on whether the specific provision in the Confirmation Order submitted by the Trustee expressly providing that PCU's claim would be paid as an allowed unsecured claim is binding even in the absence of a timely filed proof of claim. The Trustee relies primarily on *In re Zich*, in which the debtors' confirmed plan provided that a creditor's unsecured claim would be paid in full despite the creditor having failed to file a timely proof of claim. After receiving some distributions from the Chapter 13 trustee, the creditor filed an untimely proof of claim to which the debtors objected. The court sustained the debtors' objection and disallowed the creditor's claim, reasoning that:

> [t]he provisions of a confirmed Chapter 13 plan bind the debtor and the creditor. However, after confirmation of a Chapter 13 plan, distribution is only made to creditors whose claims have been "allowed." Courts have held that, absent a timely proof of claim, a creditor is not entitled to receive a distribution even though the confirmed plan provides for payments on the claim. *In re Greenig,* 152 F.3d 631 (7th Cir. 1998) (Chapter 12 case); *In re Baldridge,* 232 B.R. 394 (Bankr. N.D. Ind. 1999); *Walters v. Sherwood Municipal Court (In re Walters),* 219 B.R. 520, 523 n.1 (Bankr. W.D. Ark. 1998); Keith M. Lundin, 4 *Chapter 13 Bankruptcy 3D Edition* ¶ 288.1, p. 288–7, –8 (3d ed. 2000 & Supp. 2002) ("[n]o matter how specific the plan provision for payment of a creditor, only allowed claims can be paid through the plan").

*In re Zich*, 291 B.R. at 886 (footnotes omitted).

---

37 B.R. 874, 875 (Bankr. D.R.I. 1984) (citing *In re Greene,* 33 B.R. at 1009) ("The mere inclusion of a claim in a debtor's schedule does not meet the requirement of notice on the 'judicial record.'"). Thus, it is questionable whether the Debtors' Motion to Modify can constitute an informal proof of claim by PCU. The possibility of an informal proof of claim based upon communications between PCU and the Trustee or the Debtor was not addressed by PCU.

7

The matter before me has some significant distinguishing factors that prevent it from being neatly pigeonholed into this line of cases. First, the issue arises at the end of the Debtors' plan term in the context of disgorgement of payments to PCU made over a five-year period. Second, the Confirmation Order was presented after a hearing on the Motion to Modify and after the confirmation hearing at which the Court orally confirmed the plan. Third, the Confirmation Order was submitted by the Trustee, not only in response to that hearing, but also well after the Claims Bar Date had expired; the Trustee must be deemed to have known that at the time of the hearing and the presentation of the Confirmation Order, the Claims Bar Date had run some two months earlier and PCU had not filed a proof of claim.

PCU contends that the Confirmation Order was a final binding order under § 1327(a) on the issue of whether it held an allowed claim. *See* 11 U.S.C. § 1327(a) ("The provisions of a confirmed plan bind the debtor and each creditor."); *In re Szostek*, 886 F.2d at 1406 ("[A]fter the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code."); *see also Factors Funding Co. v. Fili (In re Fili)*, 257 B.R. 370, 373 (B.A.P. 1st Cir. 2001) (citing *Great Lakes Higher Educ. Corp. v. Pardee (In re Pardee)*, 193 B.R. 1083, 1086-87 (9th Cir. 1999)) ("Plan confirmation is a final order, with *res judicata* effect, and is imbued with the strong policy favoring finality.") (emphasis supplied).

To some degree *In re Fili* supports PCU's position, although the facts are the reverse of those presented here. In that case the deadline for objecting to the Chapter 13 plan ran *before* the claims bar date, and debtors' plan proposed to *disallow* the creditor's claim in full. The Bankruptcy Appellate Panel explained:

> Thus, we hold that in the face of notice that timely and unambiguously informs a creditor that his claim will be disallowed in total and discharged under a Chapter 13 plan pending for confirmation, the creditor may not ignore the confirmation process and fail to object simply because the bar date for filing a proof of claim has yet to expire. A creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own risk. Confirmation of such a plan, after notice and an opportunity for hearing, bars the creditor's later-filed claim under principles of *res judicata*.

*In re Fili*, 257 B.R. at 374 (emphasis supplied).

In the instant matter, the Claims Bar Date had expired; the later-filed Motion to Modify sought to treat PCU's claim as an unsecured claim under the Plan; and the Confirmation Order provided for the allowance of PCU's unsecured claim. There is precedent for filing a claim for the purpose of specifying the amount of the claim subsequent to confirmation of a plan that provided for the payment of a creditor's claim where the claims bar date had yet to run. *See In re Ryan*, No. 08-40601-MSH, 2010 WL 2889107, at *1 (Bankr. D. Mass. July 21, 2010) (clarifying that "[t]he order confirming the Chapter 13 plan in this case was *res judicata* as to the *treatment*" of certain claims, whereas "[t]he determination of the allowed *amounts* of those claims occurred outside the plan as part of the claims process and since each creditor timely filed a proof of claim to which the debtor interposed no objection, each creditor's allowed claim was in the amount set forth in its proof of claim") (emphasis supplied); *In re Euliano*, 442 B.R. 177, 189 (Bankr. D. Mass. 2010); *In re Grogan*, 158 B.R. 197, 200 (Bankr. E.D. Cal. 1993); *see also In re Fili*, 257 B.R. at 373. Yet, as with the cases barring plan distributions where a timely proof of claim has not been filed, the peculiar scenario presented here similarly does not squarely fit within the reasoning of the cases cited by PCU because the Claims Bar Date passed well before the confirmation hearing.

If the proceedings had ended with the hearing on the Motion to Modify and the confirmation of the Plan and the orders relating to that hearing, the outcome of the Trustee's

Motion for Turnover might be more easily decided. But they did not, and PCU would have me completely overlook the order entered in this case without objection disallowing its late-filed proof of claim. Indeed the turmoil PCU now faces is in large part a result of its failure to respond to the Trustee's objection to its proof of claim—an action obviously adverse to PCU's interest.[8] "A creditor who disregards a procedurally proper and plain notice that its interests are in jeopardy does so at its own risk." *In re Fili*, 257 B.R. at 374.

### C. Disgorgement of Plan Disbursements and the Equities

In the end, the respective arguments of the parties do not illuminate a clear result. Essentially, the muddle before me boils down to this: the Trustee proposed, and the Court entered, two conflicting orders after the Claims Bar Date regarding PCU's claim, the Trustee and PCU both received notice of these orders, and five years of distributions were made to PCU under the terms of the Confirmation Order. We are well beyond the point of debating the finality of either of these orders. I turn, therefore, to what I believe to be the more useful analysis for resolution of this mess wrought by both parties through their oversights and errors: a review of the case law on overpayment and disgorgement of Chapter 13 plan disbursements and consideration of the equities under these unique circumstances.

PCU argues that the "principals of equity and the harmonization of the filings and orders in this case favor PCU retaining the funds paid by the Trustee." PCU's Memo at 11. No unfair prejudice to other creditors would arise from reliance solely on the Confirmation Order, it asserts, because a "mere diminution of their dividend absent more does not rise to the level of

---

[8] It is conceivable that PCU could have opposed the objection to its claim in light of the Trustee's inclusion of the provision allowing its unsecured claim in the Confirmation Order despite the passage of the Claims Bar Date well before the entry of that order without a claim having been filed by PCU.

prejudice sufficient to disallow [PCU's] previously allowed claim . . . ."[9] *Id.* at 11 (citing *Gens*, 112 F.3d at 575). Indeed, the Plan contained a provision notifying creditors of the possibility of increased *or reduced* payments under the plan if warranted or required by the circumstances.[10]

Some courts have held that "[t]he Chapter 13 trustee's power to recover overpayment is inherent in the overall scheme of a trustee's fiduciary duties as a necessary means to ensure that the trustee's payment system functions smoothly." *Stevens v. Baxter (In re Stevens)*, 187 B.R. 48, 51-52 (Bankr. S.D. Ga. 1995), *aff'd in part and rev'd in part, Ford Motor Credit Co. v. Stevens (In re Stevens)*, 130 F.3d 1027, 1031 (11th Cir. 1997); *see also Kerney v. Capital One Fin. Corp. (In re Sims)*, 278 B.R. 457, 476 & n.10 (Bankr. E.D. Tenn. 2002); *Hope v. Brown & Williamson Fed. Credit Union (In re Vaughn)*, 110 B.R. 94, 95 (Bankr. M.D. Ga. 1990). But in these cases it was solely the *creditor* who was at fault for soliciting or accepting overpayments from the debtor or the Chapter 13 trustee.

Other courts have denied a trustee's request to recover funds that were improperly distributed as a result of the trustee's own error. *See, e.g.*, *In re Randolph*, No. 98-31564, 2001 WL 1223139, at *12-13 (Bankr. N.D. Ind. Sept. 20, 2001) (citing 11 U.S.C. § 1302) (concluding that "[a] trustee is accountable for all the property he receives and may be liable for improper distribution of funds," and denying the motion to compel repayment of erroneous distributions because "the error in this case must be attributed to the Standing Chapter 13 Trustee"); *see also* 8 *Collier on Bankruptcy* ¶ 1302.03[1][a] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2014) (citing Fed. R. Bankr. P. 2015; *Nash v. Kester (In re Nash)*, 765 F.2d 1410, 1415 (9th Cir.

---

[9] Section E of the Disbursements Summary states: "All unsecured creditors shall receive not less than 67% of the amount of their claims duly proved and allowed by the Court."

[10] Paragraph 8 of the Confirmation Order provides in its entirety:

> The Court may, from time to time during the period of the Plan, increase or reduce the amount of the payments provided by the Plan where it shall be made to appear at a hearing upon such notice as the Court may designate that the circumstances so warrant or so require.

11

1985)) (stating that the Chapter 13 trustee must keep a record of all receipts and the disposition of money and property received, and in accordance with this responsibility, he is liable for improper distributions). When faced with a similar timeline as in the present case, one court ruled that the trustee could not recover overpayments made to several creditors under the Chapter 13 plan five years after the plan was confirmed, relying on the Fourth Circuit's doctrine of equitable estoppel. *See Levin v. Fed. Land Bank of Balt. (In re Vick)*, 75 B.R. 248, 249 (Bankr. E.D. Va. 1987).

The facts in both lines of cases, however, are distinguishable from the unusual state of affairs before me where *both parties* are at fault for the distributions made to PCU. The Trustee failed to timely note the passage of the Claims Bar Date without the filing of a proof of claim by PCU when he presented the Confirmation Order providing for the allowance of PCU's claim as an unsecured claim; he did not seek to modify or vacate the Confirmation Order; and after obtaining an order disallowing the claim as untimely, he made plan payments to PCU for five years. This is not a mere "technical" error. PCU failed to object or respond to the Trustee's post-confirmation objection to its proof of claim and its disallowance; it did not seek to vacate that order; and it accepted the payments issued by the Trustee despite the order disallowing its claim and even pressed for their continuance when they stopped for a period of time.

Considering these multiple errors, if I grant the Motion for Turnover, the Trustee would escape repercussions from these deficiencies and the erroneous administration of the Debtors' plan payments. Conversely, if I deny the Motion for Turnover, PCU would escape any repercussions from its deficiencies and mistakes during this case that contributed to this muddle. "It is well accepted that the bankruptcy court is guided by the principles of equity, and that the court will act to assure that '. . . technical considerations will not prevent substantial justice from

being done.'" *Gens*, 112 F.3d at 576 (quoting *Pepper v. Litton*, 308 U.S. 295, 305 (1939)). The fair and equitable solution to this dilemma, as I see it, is to balance the equities between the Trustee and the bankruptcy estate on the one hand and PCU on the other. Where both parties could (and *should*) have acted to either avoid this conundrum, or to have brought it to the Court's attention sooner than five years post-confirmation, I conclude that the only just and even-handed result is for both parties to share equally in its resolution. PCU must turn over to the Trustee one-half of the distributions it received under the Plan.

I want to be very clear that my ruling is a narrow one, tailored to meet the unusual facts in this matter and limited to the peculiar circumstances before me.

## **CONCLUSION**

The Trustee's Motion for Turnover is GRANTED IN PART and DENIED IN PART, and the Objection of PCU is SUSTAINED IN PART and OVERRULED IN PART. Within 30 days of the entry of this Memorandum and Order, PCU shall remit the sum of $20,606.22 to the Trustee for the benefit of the Debtors' estate.

Dated: July 23, 2014					By the Court,

*/s/ Diane Finkle* 07/23/2014
Diane Finkle
U.S. Bankruptcy Court

13