**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

**BAP NOS. RI 14-049, 14-051**
_____

**Bankruptcy Case No. 08-12571-DF**
_____

**MICHAEL D. DIRUZZO and
CARMELA FALCO-DIRUZZO,
Debtors.**

_____

**PAWTUCKET CREDIT UNION,
Appellant / Cross-Appellee,**

**v.**

**JOHN BOYAJIAN, Chapter 13 Trustee,
Appellee / Cross-Appellant.**

_____

**Appeal from the United States Bankruptcy Court
for the District of Rhode Island
(Hon. Diane Finkle, U.S. Bankruptcy Judge)**

_____

**Before
Kornreich, Tester, and Cary,
United States Bankruptcy Appellate Panel Judges.**

_____

**Joel J. Votolato, Esq., John T. Gannon, Esq., and John I. Donovan, Esq.
on brief for Appellant / Cross-Appellee.**

**John Boyajian, Esq., on brief for Appellee / Cross-Appellant.**

_____

**March 31, 2015**

_____

**Cary, U.S. Bankruptcy Appellate Panel Judge.**

Pawtucket Credit Union ("PCU") and John Boyajian, the chapter 13 trustee, each filed
cross-appeals of the bankruptcy court's order granting in part and denying in part the trustee's
motion seeking a turnover of chapter 13 plan payments received by PCU.    The trustee sought
disgorgement by PCU of five years of disbursements it received under the chapter 13 plan which,
according to the trustee, were made in error.    The bankruptcy court determined both parties
were responsible for the distributions made to PCU and ordered PCU to turnover to the trustee
one-half of the distributions it received under the plan.    For the reasons set forth below, we
**REVERSE** and **REMAND** this matter for entry of an order consistent with this opinion.

## BACKGROUND

On August 21, 2008, the debtors filed a chapter 13 petition.[1]    They listed PCU as an
unsecured creditor in the amount of $75,641.00 in connection with a second mortgage on their
residence.[2]    PCU failed to file a proof of claim as of the claims bar date.    On January 20, 2009,
the debtors filed a chapter 13 plan which proposed to pay their unsecured creditors, including
PCU's claim of $75,641.00, approximately 37% of their claims.    Shortly thereafter, they also

---

[1]    Unless expressly stated otherwise, all references to the Bankruptcy Code or to specific statutory
sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. §§ 101, et seq.    All
references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[2]    Their rationale for scheduling PCU as an unsecured, rather than a secured, creditor was expressed in
their January 28, 2009 motion to modify and "strip off" PCU's mortgage, in which they asserted that their
property had an appraised value of $275,000.00 and was subject to a first mortgage in favor of Bank of
America in the amount of $302,562.00, and a second mortgage in favor of PCU in the amount of
$75,641.00.    The debtors requested the bankruptcy court to rule that PCU's second mortgage "is not
secured by the real estate located at 70 Julia Drive, North Providence, Rhode Island, and should be
designated as an unsecured claim in Debtors' Chapter 13 Plan."

2

filed a motion seeking to modify and "strip off" PCU's second mortgage as wholly unsecured pursuant to § 506(a).

At a hearing on February 26, 2009, the bankruptcy court orally granted the motion to modify and confirmed the plan, ordering, among other things, that unsecured creditors will receive 67% plus a pro rata share of the real estate proceeds. The following day, the bankruptcy court entered an order granting the motion to modify. Thereafter, the trustee submitted a proposed order confirming the plan, and on March 26, 2009, the bankruptcy court entered the trustee's proposed order as a final confirmation order. The confirmation order included the following provision:

> The second mortgage claim by Pawtucket Credit Union will be allowed as a wholly unsecured claim pursuant to the Order Granting Motion to Modify Secured Claim entered by this Court on February 27, 2009. Notwithstanding anything in the confirmed Chapter 13 Plan to the contrary, the proposed strip-off or modification of the second mortgage in favor of Pawtucket Credit Union on the Debtors' property at 70 Juli[a] Drive, North Providence, Rhode Island shall not be effective unless and until a discharge has been entered on the Bankruptcy Court's Docket in the Chapter 13 case.[3]

Five months after the claims bar date, PCU filed a proof of claim asserting an unsecured claim in the amount of $74,165.32. The trustee objected to PCU's claim as untimely. PCU did not respond to the trustee's objection, and the bankruptcy court sustained the objection.

Nearly five years later, on March 27, 2014, the trustee filed a motion seeking turnover from PCU of $41,212.43, explaining that due to a clerical error, he erroneously disbursed funds

---

[3] The confirmation order also provided that "[a]ll unsecured creditors shall receive not less than 67% of the amount of their claims duly proved and allowed by the Court."

to PCU under the confirmed plan on account of its unsecured claim.[4]   He asserted that because

the bankruptcy court sustained his objection to PCU's untimely proof of claim, PCU did not hold

an allowed claim and was not entitled to receive any distributions under the plan.    PCU

objected to the motion for turnover, because the confirmation order expressly allowed its

unsecured claim, and, despite its later untimely proof of claim, the confirmation order had res

judicata effect that barred collateral attacks against the allowed claim.

On July 24, 2014, the bankruptcy court docketed the order granting in part and denying in

part the trustee's turnover motion, and ordering PCU to turn over one-half of the disbursements it

had received under the plan.[5]   The bankruptcy court explored both parties' arguments in depth

and ultimately determined that both were at fault for the erroneous payments and neither party

took any action for five years to correct the problem.    As a result, the bankruptcy court

determined the fair and equitable solution was for both parties to share equally in the resolution.

Thus, it directed PCU to turn over to the trustee one-half of the distributions PCU had received.

Neither party was happy with the result, and these cross-appeals followed.

## JURISDICTION

Before addressing the merits of an appeal, we must determine that we have jurisdiction,

even if the litigants do not raise the issue.    See Boylan v. George E. Bumpus, Jr. Constr. Co. (In

re George E. Bumpus, Jr. Constr. Co.), 226 B.R. 724 (B.A.P. 1st Cir. 1998).    We have

jurisdiction to hear appeals from final judgments, orders, and decrees.    28 U.S.C. § 158(a)(1).

---

[4]   According to the trustee, when he entered PCU's claim into his computer software program, he should
have recorded the amount of the claim as $0.00 but due to a clerical error, he mistakenly recorded the
claim in the amount set forth in PCU's proof of claim.

[5]   See In re DiRuzzo, 513 B.R. 422 (Bankr. D.R.I. 2014).

4

A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Fleet Data Processing Corp. v. Branch (In re Bank of New Eng. Corp.), 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998) (internal quotations and citation omitted). The turnover order was a final determination as to the disgorgement of the funds; thus we have jurisdiction to hear these appeals. See Ford Motor Credit Co. v. Stevens (In re Stevens), 130 F.3d 1027 (11th Cir. 1997) (considering appeal from order permitting chapter 13 trustee to recover overpayments creditor received from confirmed plan).

## STANDARD OF REVIEW

We apply the clearly erroneous standard to findings of fact and de novo review to conclusions of law. See Lessard v. Wilton-Lyndeborough Coop. Sch. Dist., 592 F.3d 267, 269 (1st Cir. 2010). The question of whether PCU had an allowed claim is a question of law subject to de novo review. Aboody v. United States (In re Aboody), 223 B.R. 36, 37 (B.A.P. 1st Cir. 1998).

## DISCUSSION

I.    **The Parties' Arguments on Appeal**

PCU asserts that we should reverse the turnover order because: (1) it is erroneous as a matter of law as it violates the principles of finality and res judicata by modifying the confirmation order; (2) it is clearly erroneous in light of the trustee's unclean hands; and (3) it is arbitrary because it simply splits the amount in controversy and compels both parties to share the damages equally.

The trustee also contends the turnover order should not be affirmed. He argues that because PCU did not file a timely proof of claim, PCU did not have an allowed claim and was

5

not entitled to receive any distributions under the plan.    According to the trustee, the bankruptcy

court should have ordered PCU to return all of the distributions it received and "the [b]ankruptcy

[c]ourt's arbitrary division of the disbursements made to PCU was incorrect as a matter of law."

In addition, the trustee argues the unclean hands doctrine does not bar his recovery of the funds

as there was no misconduct or bad intent on his part.

## II.    Applicable Law

### A.    Claims Allowance Process

The Bankruptcy Code and Bankruptcy Rules govern the requirements for the filing and

allowance of proofs of claim in a chapter 13 case.    Creditors may file proofs of claim in

bankruptcy proceedings pursuant to § 501(a).    Filed claims are "deemed allowed, unless a party

in interest . . . objects."    11 U.S.C. § 502(a).    Pursuant to Bankruptcy Rule 3002(a), an

unsecured creditor generally is required to file a proof of claim for purposes of allowance of its

claim.    The significance of having an allowed claim in a chapter 13 case is straightforward:

"after a plan is confirmed, distribution shall be made to creditors whose claims have been

allowed . . . ."    Fed. R. Bankr. P. 3021.    "Disallowed claims will not participate in the case or

receive any payment with regards to that claim."    In re Ruiz Martinez, 513 B.R. 779, 783

(Bankr. D.P.R. 2014) (citing Alan N. Resnick & Henry J. Sommer, 5 Collier on Bankruptcy

¶ 502.01 (16th ed. 2012); In re Pick & Save, Inc., 478 B.R. 110, 121 (Bankr. D.P.R. 2012)).

Section 502(b) enumerates a variety of grounds for disallowance of a claim including

untimely filed claims.    11 U.S.C. § 502(b)(9).[6]    Thus, in chapter 13 cases, a timely filed proof

of claim is a precondition to allowance of an unsecured claim and the creditor's right to receive

distributions under the plan.    Vicenty v. San Miguel Sandoval (In re San Miguel Sandoval),

327 B.R. 493, 512 (B.A.P. 1st Cir. 2005); see also Municipality of Carolina v. Baker González

(In re Baker González), 490 B.R. 642, 647 (B.A.P. 1st Cir. 2013) ("If an unsecured creditor's

claim is to be allowed in a chapter 13 case, a proof of claim must be filed. . . . Under the

Bankruptcy Code and [Bankruptcy] Rule 3002[(a)] an unsecured creditor **must** file a proof of

claim in order to have a right to payment from the estate.") (citations omitted); 4 Collier on

Bankruptcy ¶ 501.01[2][a], [b].

It is undisputed that PCU did not file a proof of claim or obtain an extension of the

deadline before the claims bar date expired.[7]    It is also undisputed that after the bankruptcy

---

[6]    In a chapter 13 case, "a proof of claim is timely filed if it is filed not later than 90 days after the first
date set for the meeting of creditors called under § 341(a) of the Code."    Fed. R. Bankr. P. 3002(c).    "A
court may enlarge the time for filing a proof of claim only to the extent and under the conditions stated in
Rule 3002(c)."    Zich v. Wheeler Wolf Attorneys (In re Zich), 291 B.R. 883, 885 (Bankr. M.D. Ga. 2003)
(footnote omitted).    None of the conditions set forth in Bankruptcy Rule 3002(c) applied here.

[7]    PCU argued below that although it did not file a proof of claim before the claims bar date, it held an
allowed claim before the court entered the confirmation order because the debtor's motion to modify and
"strip off" PCU's mortgage constituted an informal proof of claim.    The trustee countered that the
motion to modify could not constitute an informal proof of claim because one of the requirements for an
informal proof of claim is that the *creditor* take the action that constitutes the informal claim.    The
bankruptcy court indicated the trustee's counter-argument had merit, but it determined PCU's argument
was a red herring in light of the unique circumstances of this case, and because PCU completely ignored
the subsequent order sustaining the trustee's objection to PCU's claim.    In its brief, PCU suggests in
passing that it had an informal proof of claim, but does not address the argument or the bankruptcy
court's treatment thereof.    Consequently, the issue has been waived and is not before us in this appeal.
See Canning v. Beneficial Me., Inc. (In re Canning), 706 F.3d 64, 70 n.7 (1st Cir. 2013) (holding failure
to brief an argument constitutes waiver).

7

court entered the confirmation order, PCU filed an untimely proof of claim, and the bankruptcy

court sustained the trustee's objection to the untimely claim. The parties disagree, however, as

to whether the specific provision in the confirmation order expressly providing that PCU's claim

"will be allowed as a wholly unsecured claim" is binding even in the absence of a timely filed

proof of claim.[8] Thus, the crucial issue here is whether the binding effect of a confirmed

chapter 13 plan prevails over a claim that is disallowed under the claims allowance process set

forth in the Bankruptcy Code and Rules.

## B.    Binding effect of confirmed plan

Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and

each creditor, whether or not the claim of such creditor is provided for by the plan, and whether

or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C.

§ 1327(a). The confirmed plan binds not only the debtors and creditors but also the chapter 13

trustee. See Bankowski v. Wells Fargo Bank, N.A. (In re Reid), 480 B.R. 436, 444-45 (Bankr.

D. Mass. 2012); see also Boyajian v. Vargas (In re Vargas), BAP No. RI 11-076, 2012 Bankr.

LEXIS 2910, at *15 (B.A.P. 1st Cir. Jun. 8, 2012) ("Although not listed as a party, a chapter 13

trustee is bound by a confirmed plan as well."). "Plan confirmation is a final order, with *res

judicata* effect, and is imbued with the strong policy favoring finality." Factors Funding Co. v.

Fili (In re Fili), 257 B.R. 370, 373 (B.A.P. 1st Cir. 2001) (citations omitted). "'Absent timely

appeal, the confirmed plan is *res judicata* and its terms are not subject to collateral attack. The

---

[8]   The use of the word "will" in the confirmation order might suggest some future action must occur
before PCU's unsecured claim would be allowed. However, we observe that the order ties the allowance
of the claim to an event which had already occurred, the bankruptcy court's February 27, 2009 order,
which in turn held that unsecured creditors would "receive 67% plus a pro rata share of the real estate
proceeds." Additionally, this argument was not raised on appeal.

*res judicata* effect of confirmation may be eliminated only if confirmation is revoked or if the

case is later dismissed or converted to another chapter.'"   In re Jimenez Galindez, 514 B.R. 79,

89 (Bankr. D.P.R. 2014) (citing 8 Collier on Bankruptcy ¶ 1327.02[1]).

The U.S. Bankruptcy Appellate Panel for the First Circuit has discussed the binding

effect of a confirmed plan pursuant to § 1327(a), stating as follows:

> Under this provision, once a bankruptcy plan is confirmed, the debtor and each
> creditor are bound by its terms.   See [11 U.S.C. § 1327(a)].   As the First Circuit
> has explained, "confirmation of a Chapter 13 plan customarily is res judicata as to
> all issues that were or could have been decided during the confirmation process."
> Carvalho v. [Fannie Mae] (In re Carvalho), 335 F. 3d 45, 49 (1st Cir. 2003).
> "There must be finality to a confirmation order so that all parties may rely upon it
> without concern that actions that they may later take could be upset because of a
> later change or revocation of the order."   4-1327 Alan N. Resnick & Henry J.
> Sommer, Collier Bankruptcy Manual, ¶ 1327.02[1] (3d. ed. rev.).   The United
> States Supreme Court has emphasized that plan confirmation orders are final and
> binding regardless of pre-confirmation rights held by creditors.   See United
> Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 176 L. Ed. 2d 158 (2010).
>
> The binding effect of confirmation has led courts to conclude that once a plan is
> confirmed, a creditor's rights and interests are defined within the boundaries of
> the plan, and proceedings that are inconsistent with the confirmed plan are
> improper . . . .

New Hampshire v. McGrahan (In re McGrahan), 459 B.R. 869, 874 (B.A.P. 1st Cir. 2011).

As the McGrahan panel noted, the U.S. Supreme Court addressed the binding nature of

confirmation orders in Espinosa, supra.   In Espinosa, the debtor proposed a plan which

provided he would only repay the principal on his student loans and the accrued interest on the

loan would be discharged.   559 U.S. at 264.   The proposed plan was served on the student loan

creditor, who filed a proof of claim including both the principal and the accrued interest.   Id. at

265.   Absent objections, the bankruptcy court confirmed the plan.   Id.   After the debtor

received the discharge, the student loan creditor challenged the confirmed plan by requesting that

the discharge order be deemed void pursuant to Fed. R. Civ. P. 60(b)(4) because the creditor did

not receive due process.    The student loan creditor argued the debtor had to file an adversary

proceeding pursuant to Bankruptcy Rule 7001(6) for the bankruptcy court to first determine

whether the student loan interest debt would impose an undue hardship on the debtor under

§ 523(a)(8) before confirming the discharge of the student loan interest debt.

The Supreme Court stated that "[a] proposed bankruptcy plan becomes effective upon

confirmation . . . and will result in a discharge of the debts listed in the plan if the debtor

completes the payments the plan requires . . . ."    Id. at 264 (citations omitted).    The Supreme

Court held: "Where, as here, a party is notified of a plan's contents and fails to object to

confirmation of the plan before the time for appeal expires, that party has been afforded a full

and fair opportunity to litigate . . . ."    Id. at 276.    The Supreme Court ruled: "Given the Code's

clear and self-executing requirement for an undue hardship determination, the Bankruptcy

Court's failure to find undue hardship before confirming [the debtor's] plan was a legal error. . . .

But the order remains enforceable and binding on [the creditor] because [creditor] had notice

of the error and failed to object or timely appeal."    Id. at 275.    Thus, the terms of the

confirmed plan bound the student loan creditor who did not object to confirmation even though

the treatment of the creditor's claim in the plan violated the Code.    Id. at 275-76.

The Monahan panel considered the effects of the Espinosa decision, stating:

> Courts have held that Espinosa stands for the "limited proposition that a
> confirmed plan is binding on all parties in interest, *provided the plan proponent
> afforded such parties adequate notice,* consistent with the Due Process Clause of
> the United States Constitution-even if the plan violates the Bankruptcy Code in
> some particulars."    In re Deavila, 431 B.R. 178, 179 (Bankr. W.D. Mich. 2010)
> (emphasis added); see also In re Brodeur, 434 B.R. 348, 351 n.2 (Bankr. D. Vt.
> 2010) (noting that Espinosa "defines the binding effect of confirmation orders on
> interested parties *who receive sufficient notice"*) (emphasis added).

10

United States v. Monahan (In re Monahan), 497 B.R. 642, 651 (B.A.P. 1st Cir. 2013).    Thus,

after Espinosa, a "'creditor or other party in interest who chooses to sleep on its rights by not

objecting to a plan does so at its own peril and *as long as due process requirements are met,* will

be bound by it.'"    Id. (quoting In re McLemore, 426 B.R. 728, 744 (Bankr. S.D. Ohio 2010)

(citation omitted)).

      In its opening brief, PCU relies primarily on In re Fili, supra, to support its argument that

the confirmation order was a final binding order on the issue of whether PCU held an allowed

claim.    In In re Fili, the deadline for objecting to the chapter 13 plan ran before the claims bar

date, and the debtors' plan proposed to discharge the creditor's claim in full.    In re Fili, 257

B.R. at 371.    The creditor failed to object to plan confirmation, and the plan was confirmed.

Id.    After plan confirmation, but before the claims bar date, the creditor filed a secured proof of

claim.    Id.    The debtors objected, asserting that the claim was barred by the confirmed plan,

and the bankruptcy court disallowed the creditor's claim.    Id. at 371-72.    The Fili panel

affirmed, explaining:

> Thus, we hold that in the face of notice that timely and unambiguously informs a
> creditor that his claim will be disallowed in total and discharged under a Chapter
> 13 plan pending for confirmation, the creditor may not ignore the confirmation
> process and fail to object simply because the bar date for filing a proof of claim
> has yet to expire.    A creditor who disregards a procedurally proper and plain
> notice that its interests are in jeopardy does so at its own risk.    Confirmation of
> such a plan, after notice and an opportunity for hearing, bars the creditor's later-
> filed claim under principles of *res judicata*.

Id. at 374 (footnote omitted).    PCU asserts that the In re Fili court "chose to emphasize the

finality of . . . [the] Confirmation Order discharging the debt over the deadline for the filing and

allowance of Proofs of Claim under which [the creditor] still had time to file a proof of claim."

According to PCU, the binding effect of confirmation should always prevail over other

conflicting sections of the Bankruptcy Code.    See In re Szostek, 886 F.2d 1405, 1408 (3d Cir.

1989).[9]    Thus, PCU contends, notwithstanding the claims bar date set by Bankruptcy Rule

3002, the confirmation order allowed PCU's claim, and "the finality of the Confirmation Order

with its res judicata effects trump[s] the bar date set by the rules and subsequent disallowance of

the Proof of Claim."    Although In re Fili and In re Szostek were issued prior to Espinosa, they

are consistent with the Espinosa holding.

      In a recent decision, the U.S. Bankruptcy Court for the District of Puerto Rico examined

the interplay between the claims allowance process and the binding effect of a chapter 13 plan in

light of Espinosa and its progeny.    See In re Jimenez Galindez, supra.    The Jimenez Galindez

court examined the three different approaches for handling inconsistencies between the claims

allowance process and the binding effect of the plan developed through case law: (1) the "claims

process over the plan confirmation process"; (2) the "chapter 13 plan process over the claims

process"; and (3) the "middle-of-the-road approach."    514 B.R. at 93 (internal quotations and

citation omitted).    After an extensive discussion, the bankruptcy court determined that, in light

of Espinosa, the various commentators, and the relevant sections of the Bankruptcy Code, the

binding effect of the chapter 13 plan prevails over other considerations, with the exception of

---

[9]   In In re Szostek, the court considered two "seemingly divergent policies" – the policy of finality of confirmation orders set forth in § 1327 and the language of § 1325(a), which provides that a court shall confirm a plan which meets the conditions listed in that section.    886 F.2d at 1408.    The Szostek court ultimately determined: "[A]lthough prior to confirmation the bankruptcy court and trustee do have a responsibility to verify that a Chapter 13 plan complies with the Bankruptcy Code provisions, after the plan is confirmed the policy favoring the finality of confirmation is stronger than the bankruptcy court's and the trustee's obligations to verify a plan's compliance with the Code."    Id. at 1406.

notice and due process.   The court stated: "This court adopts the second approach, which emphasizes the binding effect of a confirmed plan provided that the due process requirements of reasonable and actual notice were satisfied.   This view is aligned with the Espinosa decision, which supports the principle of finality of plan confirmation orders."   Id. at 97 (citing In re McGrahan, 459 B.R. at 874-875; In re Murphy, 487 B.R. 86, 94 (Bankr. D.R.I. 2013); In re Muñoz Marquez, No. 10-03882, 2011 Bankr. LEXIS 3806 (Bankr. D.P.R. Sept. 28, 2011)).

In adopting this approach, the Jimenez Galindez court noted that commentators Lundin and Brown, in their Chapter 13 Bankruptcy treatise, opined that Espinosa should not be read narrowly, that is, as being just a student loan discharge case – rather the Espinosa decision is:

> ". . . a robust confirmation that the effect of confirmation under § 1327(a) really means what the Code says: 'The provisions of a confirmed plan bind the debtor and each creditor . . . whether or not such creditor has objected to, has accepted, or has rejected the plan.'   Although many circuit court decisions have gone astray in recent years, chipping away at the finality of confirmation orders in various contexts in chapter 13 cases—sometimes confusing statutory and procedural rights with constitutional due process—in Espinosa, the Supreme Court brings us back to reality."   Keith M. Lundin & William H. Brown, Chapter 13 Bankruptcy, 4th Edition, § 229.1, at ¶[83], Sec. Rev. Oct. 8, 2010, www.Ch13online.com.

Id. at 96-97.

In this case, there are no questions regarding due process.   All parties received copies of the proposed chapter 13 plan, the proposed confirmation order drafted by the trustee, and the final confirmation order, and no objections were filed.   Certainly the trustee had notice of the proposed confirmation order as he drafted the proposed order which included the provision allowing PCU's unsecured claim despite the fact that the claims bar date had passed months prior to the confirmation hearing and PCU had failed to file a proof of claim.   Although the trustee would have us rule that PCU was not entitled to disbursements under the plan, even

13

though the plan provided for payments on PCU's claim, in the absence of a timely proof of

claim, the supporting cases he cites are primarily pre-Espinosa cases.     See, e.g., In re Zich,

supra, and In re Jurado, 318 B.R. 251 (Bankr. D.P.R. 2004).[10]     As Lundin and Brown pointed

out, many courts have "gone astray . . . chipping away at the finality of confirmation orders in

various contexts in chapter 13 cases," but Espinosa "brings us back to reality."     Chapter 13

Bankruptcy, 4th Edition, § 229.1 at ¶ 83.     Thus, although PCU failed to comply with the

provisions of the Bankruptcy Code and Bankruptcy Rules which require an unsecured creditor to

file a proof of claim in order to have an allowed claim and receive distributions, it is clear that, in

light of Espinosa and its progeny, the binding effect of the confirmed plan trumps the claims

allowance process in this case.     As the confirmed plan expressly stated PCU's claim was

"allowed as a wholly unsecured claim pursuant to the Order Granting Motion to Modify Secured

Claim . . . ," the confirmed plan was binding on the issue of whether PCU held an allowed claim,

and the trustee made proper distributions to PCU through the plan.[11]

---

[10]   The trustee also cites the post-Espinosa case of In re Baker González, supra.   In In re Baker
González, a municipality holding an unsecured claim for unpaid taxes did not file a proof of claim before
the claim bar date.   490 B.R. at 644.   Thereafter, the bankruptcy court confirmed the debtor's plan,
which provided for the payment of certain priority claims, including that of the municipality.   Id.   After
plan confirmation, the debtor filed a proof of claim on behalf of the municipality.   Id.   The chapter 13
trustee objected to the claim as untimely, and the bankruptcy court sustained the objection and disallowed
the claim.   Id. at 644-45.   Almost ten months later, the municipality moved to set aside the order
disallowing its claim, arguing the debtor should not have been allowed to file the proof of claim when she
knew the claims bar date had expired and the claim likely would be disallowed.   The bankruptcy court
denied the request, and the municipality appealed.   The Baker González panel affirmed, concluding the
municipality did not have an allowable claim under §§ 501 and 502 and Bankruptcy Rule 3002(c) because
it failed to file a timely proof of claim, and the proof of claim filed on its behalf by the debtor was
untimely.   Id. at 649-50.   In re Baker González is distinguishable from the present case, however,
because the plan did not expressly provide for the allowance of the municipality's claim, as the confirmed
plan did here.

[11]   This is so regardless of the discrepancies between the confirmation order, which provided that the
unsecured creditors would receive a payout of 67% of their claims and the actual lesser payout which

Consequently, we conclude that the bankruptcy court erred in ordering PCU to turn over

one-half of the distributions it received through the plan.[12]

## <u>CONCLUSION</u>

For the reasons discussed above, we **REVERSE** and **REMAND** this matter for entry of

an order consistent with this opinion.

---

occurred because PCU's claim was included.

[12]  In light of this decision, there is no need for us to address the equitable considerations raised by the
bankruptcy court or PCU's argument that the trustee was barred from obtaining equitable relief in light of
his "unclean hands."   Moreover, the doctrine of unclean hands is not applicable here as there is no
evidence the trustee acted unethically or in bad faith, and PCU's counsel conceded that point at oral
argument.   See Dr. Jose S. Belaval, Inc. v. Perez-Perdomo, 488 F.3d 11, 15 (1st Cir. 2007) (generally,
the doctrine of unclean hands is only applicable in cases where one party has engaged in misconduct);
Netria Corp. v. Graham (In re Graham), 363 B.R. 32, 39 (Bankr. D.N.H. 2007) (holding the doctrine of
unclean hands "applies only when the plaintiff has acted unethically or in bad faith with regard to the
subject matter of the complaint").